IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

TRAVIS JAMES TOLAN,

                    Plaintiff,

vs.

YELLOWSTONE COUNTY, *et al*,

                    Defendants.

CV-20-002-BLG-SPW-KLD

FINDINGS AND
RECOMMENDATIONS

Currently before the Court are Motions for Summary Judgment filed by Defendant Deputy Brendan Trujillo ("Trujillo"), Deputy Tyler Sennett ("Sennett") and Yellowstone County, respectively.  (Docs. 40, 50 and 52).  For the reasons stated below, the Court recommends these motions be denied at this time.

**I.    Background**

This case arises from an officer-involved shooting that took place in Billings, Montana.  On January 21, 2018, at approximately 6:00 a.m., John Haynes, a dispatcher with the Lockwood Rural Fire District, received a phone call from James Jennings.  (Doc. 61 at 1).  Jennings told Haynes that he had seen a social media post from his friend, Travis Tolan ("Tolan"), indicating Tolan might be suicidal.  (Doc. 61 at 1).  Jennings requested a welfare check on Tolan, and advised that Tolan might have a gun.  (Doc. 61 at 2).  Haynes dispatched Deputies Trujillo

and Sennett to perform the welfare check, and advised them of the circumstances surrounding the request for the check.  (Doc. 61 at 2).

Prior to being dispatched to Tolan's home, neither Trujillo nor Sennett had had any interaction with Tolan, nor did they know him.  (Doc. 43 at ¶ 6; Doc. 44 at ¶ 2).  At the time they were dispatched, Trujillo and Sennett had been told Tolan might be suicidal and have a pistol.  (Doc. 43 at ¶ 6; Doc. 44 at ¶ 2).  Based on their past experiences with welfare checks on suicidal people, both officers suspected Tolan might be emotionally unstable and under the influence of alcohol or drugs. (Doc. 43 at ¶ 6; Doc. 44 at ¶ 2).  However, at the time they arrived at Tolan's house, neither Trujillo nor Sennett had any specific knowledge about Tolan himself.  They had no information about whether he was intoxicated or under the influence of drugs (Doc. 60-1 at 12-13; Doc. 60-3 at 15-16).  They only knew that he was suicidal and might have a gun.

While the deputies were en route, in separate cars, to Tolan's home, Trujillo asked dispatch if it had any phone numbers for Tolan, and was initially told that it had no available phone numbers.  (Doc. 60-1 at 16-18; Doc 60-3 at 18).  However, dispatch radioed again and gave phone numbers for Tolan approximately 10 minutes before the shooting occurred.  (Doc. 60-3 at 19-20).  Neither officer attempted to reach Tolan by phone prior to approaching his home.  (Doc. 60-1 at 20; Doc. 60-3 at 22).

When Trujillo and Sennett arrived at the Tolan home, they were driving patrol vehicles but did not have the emergency lights or sirens activated. (Doc. 44 at 2). After exiting their vehicles, Sennett and Trujillo approached Tolan's porch, with Sennett in the front. (Doc. 44 at 3). Both deputies were aware that generally people tend to be apprehensive when law enforcement makes an unannounced visit to their home at night. (Doc. 60-1 at 2-3; Doc. 60-3 at 2-3). Sennett knocked on the door, but did not announce himself as a police officer. (Doc. 44 at 3). He was concerned that it would make the welfare check more complicated. Sennett could hear movement in the home, and heavy, fast-paced footsteps as he stood on the porch. (Doc. 44 at 3-4).

From Tolan's perspective, his first indication that a person or people were on his property when he saw flashlights through his living room window. (Doc. 60-4 at 3). Tolan was worried about his home being burglarized again, so he got his pistol. (Doc. 60-5 at ¶ 2). Tolan did not hear any knocking on his door. (Doc. 60-4 at 4). Tolan was unaware that law enforcement had been called to his home. (Doc. 60-5 at ¶¶ 6-7). Tolan turned on his front porch light and called out "hello" to whomever was on his porch, intending to find out if he knew the person. (Doc. 60-5 at ¶ 4). The deputies did not answer. (Doc. 60-5 at 2; Doc. 60-1 at 7; Doc. 60-3 at 9-10). Although both deputies initially denied hearing any statements from inside the house when they were interviewed by detectives with the Yellowstone

County Sheriff's Office ("YCSO") (Docs. 60-11, 60-12, 60-13 and 60-14), a video from the scene confirms that Tolan called out and that it was audible to the deputies. Both deputies concede that Tolan can be heard calling "hello" on the video after Sennett knocked, although they have also filed sworn statements stating that no one responded to the knocks at the door. *Cf.* Doc. 60-1 at 7 and Doc. 60-3 at 9-10 with Doc. 43 at 5 and Doc. 44 at 6.

From that point, the exact sequence of events is somewhat murky and has evolved over time. It is undisputed that when Tolan answered the door in the early morning of January 21, 2018, he had a gun in one of his hands. The parties agree on very little other than that fact. According to Trujillo and Sennett, the front door to the home swung open and slammed shut, and then swung open again, and the officers "saw Tolan walk out of the [] home". (Doc. 43 at ¶ 7; Doc. 44 at ¶ 4).

In statements provided to the YCSO on January 21, 2018 and February 13, 2018, Trujillo stated that Tolan had a gun in his right hand and "was ready to either aim it" at himself and Sennett. (Docs. 60-13 at 2, 7; 60-14 at 7). In his affidavit filed in support of his motion for summary judgment, Trujillo stated that Tolan had the gun in his right hand and was "begin[ning] to raise the pistol has (sic) if he intended to fire the pistol at me or Sennett." (Doc. 43 at ¶ 7). Sennett, who was on the porch and closest to Tolan, immediately heard gunshots and believed he stated "gun" or "drop the gun" as he drew his gun. (Doc. 44 at ¶ 4). Trujillo, in the

meantime, drew his pistol and fired twice at Tolan.  (Doc. 43 at ¶ 7).  Sennett also

shot at Tolan, and fell back off the porch.  (Doc. 44 at ¶ 4).  Trujillo initially

believed that Sennett had been shot by Tolan, but Tolan did not shoot his pistol at

either officer.  (Doc. 43 at ¶7).  Both Sennett and Trujillo ran for cover and hid

behind a vehicle in the street while waiting for backup.  (Doc. 44 at ¶ 7; Doc. 43 at

¶ 4).

Tolan's recollection of the shooting is different than that of the officers.  Tolan

stated that he opened the door to find out who was on the porch and why they were

there, but when the door opened, there was a flashlight in his face and he could not

identify who was on the porch.  (Doc. 60-5 at ¶ 7).  Because the deputies did not

answer when he called to them, Tolan assumed the person or persons on his porch

were not there for any good reason.  (Doc. 60-5 at ¶ 5).  Tolan recalled holding his

pistol in his left, non-dominant hand, with his arm at his side and the pistol barrel

pointing down to the floor.  (Doc. 60-4 at 4; Doc. 60-5 at ¶ 8).  Tolan denied

raising the pistol, pointing the pistol at Sennett, who was on the porch, and denied

threatening the officers in any way.  (Doc. 60-5 at ¶ 8).

One of Trujillo's shots hit Tolan in the abdomen.  (Doc. 47 at 2).  Neither of

Sennett's shots hit Tolan.  (Doc. 47 at 2).  After backup arrived, both Trujillo and

Sennett entered Tolan's home, and found him on the floor suffering from a gunshot

wound to the stomach. (Doc. 43 at ¶ 8). Tolan was transported to the hospital via ambulance, and underwent surgery for his gunshot wound. (Doc. 43 at ¶ 8).

Tolan brought this action alleging claims under 42 U.S.C. § 1983 and Montana law against the Yellowstone County, the YCSO[1], Sheriff Mike Linder, Deputy Sennett and Deputy Trujillo. (Doc. 1). The Court previously dismissed all claims against Sheriff Linder, as well as Count I against the County and the YCSO, Count II in its entirety, and Count III against Sennett and Trujillo. (Docs. 29 and 30). Accordingly, the remaining claims are § 1983 claims against Sennett and Trujillo, negligence against the County, and assault and battery against all three Defendants.

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex*

---

[1] Although the parties seem to agree that the YCSO is a subdivision of Yellowstone County, and thus not appropriately sued, there has been no formal dismissal of the YCSO from this case. Instead, the parties have simply gone forward with the County as the municipal defendant. Accordingly, the Court will similarly consider the County as the appropriate municipal defendant.

*Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden

where the documentary evidence produced by the parties permits only one

conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported

motion, summary judgment is appropriate unless the non-moving party designates

by affidavits, depositions, answers to interrogatories or admissions on file "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324

(1986). The party opposing a motion for summary judgment "may not rest upon

the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing*

*Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must

view the evidence in the light most favorable to the non-moving party and draw all

justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255;

*Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).  In

cases involving an inquiry into the use of force by officers, summary judgment

should be granted sparingly because the analysis "nearly always requires a jury to

sift through disputed factual contentions, and to draw inferences therefrom."

*Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011).

## III.   Discussion

Sennett and Trujillo have moved the Court for summary judgment, arguing they did not use unreasonable force against Tolan. They also argue that even if they did use unreasonable force, they are entitled to qualified immunity. Finally, they argue they did not act with the mental state to justify an award of punitive damages. The County has also moved for summary judgment, arguing the deputies are immune from all state claims because they were justified in using deadly force against Tolan; that the deputies' actions were intentional and thus cannot be the basis of a negligence claim against the County; that the deputies were entitled to assault and batter[2] Tolan to defend themselves; and that punitive damages are not available against the County.

### A. Qualified Immunity and Excessive Force

Both Sennett and Trujillo claim they are entitled to summary judgment because they did not use excessive force. However, even if the Court determines they did use excessive force, Sennett and Trujillo argue they are entitled to qualified immunity because the constitutional right was not clearly established at the time of the violation.

### 1. Excessive Force

---

[2] The parties have agreed that Sennett did not batter Tolan, and any claim based on that allegation should be dismissed.

When analyzing a Fourth Amendment claim that an officer used excessive force, the Court must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Rice II v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021), citing *Graham v. Connor*, 490 U.S. 386, 397 (1989). Reasonableness "must be judged from the perspective of the reasonable officer on the scene", not with the certainty afforded by 20/20 hindsight. *Glenn,* 673 F.3d at 871 (citations omitted). In *Graham*, the Court noted the reasonableness test is "not capable of precise definition or mechanical application," but instead "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 386 U.S. at 396 (citations omitted).

The Ninth Circuit has noted that the reasonableness analysis has three steps: (1) assessment of the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted; (2) evaluation of the government's interest in the use of force; and (3) balancing the gravity of the intrusion on the individual's rights against the government's need for the intrusion. *Glenn*, 673 F.3d at 871 (citations omitted). Here, it cannot be disputed that Trujillo shooting Tolan in the abdomen was deadly force, thus a

severe intrusion on Tolan's Fourth Amendment rights.  Accordingly, the Court will begin with an evaluation of the state's interest in the use of force.

In evaluating the state's interests at stake, the Court must consider the factors set out in *Graham*:  the severity of the crime at issue, whether Tolan posed an immediate threat to the safety of the officers or others, and whether Tolan actively resisted arrest or attempted to escape.  *C.V. by and through Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016).  An officer reasonably uses deadly force only when "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994), citing *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).  The *Graham* factors are not exhaustive, however, and the Court may also consider whether appropriate warnings were given and "whether it should have been apparent to the officers that the person they used force against was emotionally disturbed."  *Glenn*, 673 F.3d at 872.

Tolan was neither suspected of a crime nor attempted to flee or resist arrest, so two of the *Graham* factors weigh against the officers.  The most important of the *Graham* factors is at issue in this case, and it requires the Court to consider whether Tolan posed an immediate threat to the safety of the officers or others. *Lowry v. City of San Diego*, 858 F.3d 1248, 1258 (9th Cir. 2017).

In viewing the facts in the light most favorable to Tolan, the Court finds that there are genuine issues of material fact, precluding summary judgment on the issue of use of excessive force.  On the night they went to Tolan's home, Trujillo and Sennett knew they were going to encounter someone who claimed to be suicidal, and knew that he might have a gun.  They had no information to suggest that Tolan was a danger to anyone other than himself, nor did they have any reason to believe Tolan had violent tendencies.  Despite this, they did not announce themselves or in any other way try to engage Tolan before arriving at the home. Trujillo and Sennett were provided several phone numbers for Tolan, and had them before arriving at his home, yet they did not attempt to call him to inform him that law enforcement was outside.  They did not turn on their patrol sirens or lights or in any other way indicate to Tolan that they were law enforcement, as opposed to burglars as Tolan believed.  They did not respond when Tolan called out "hello" in an effort to determine who was on his property.

Most critical to this analysis, however, is the fact that Tolan had a gun in his hand when he opened his door.  At first blush, it would seem that would end the discussion, but the fact that a suspect simply possesses a weapon does not sanctify use of force.  *Glenn*, 673 F.3d at 872-73.  Officers are not required to wait until a suspect turns his weapon on them, and in fact may be in immediate danger based on a furtive movement or verbal threat.  *George v. Morris*, 736 F.3d 829, 838 (9th

11

Cir. 2013). However, when there are disagreements about the suspect's actions, summary judgment is not appropriate.

In *George*, officers were dispatched to a home after a woman called to report her husband, who was suffering from brain cancer, had taken his gun from his truck. Officers believed there was a domestic dispute, and when they arrived, they were directed by the wife to the patio, where the husband had his gun as well as the walker he used to ambulate. *George*, 736 F.3d at 833-32. While it was undisputed that the husband exited onto the patio using his walker while holding his pistol, the parties disputed whether the husband pointed the gun at the deputies. One of the deputies shot the husband, and he died. *George*, 736 F.3d at 833.

The district court found there were genuine issues of material fact whether the husband was a threat to the safety of the deputies. On appeal, the Ninth Circuit noted when there were disputes of fact about whether the weapon was pointed at officers, summary judgment was not appropriate. *George*, 736 F.3d at 838. *See also Estate of Lopez by and through Lopez v. Gelhaus*, 871 F.3d 998, 1010-1011 (9th Cir. 2017) (a reasonable jury could find suspect did not pose immediate threat when gun was not in a position that posed threat to officers).

In this case, a jury could reasonably find that, under the particular facts of the case, Tolan did not pose an immediate threat to Trujillo and Sennett. While the officers claim Tolan was "beginning" to raise his pistol as if he intended to shoot at

the officers, Tolan adamantly denies this and states that at all times, his weapon was in his non-dominant hand, pointed downward.[3]  This is a quintessential issue of fact that is not only material, it is crucial to the determination of whether Trujillo and Sennett acted reasonably under all the circumstances.  It is appropriately reserved for the jury.

### 2.  Qualified Immunity

Even if Trujillo and Sennett used unreasonable force, they are entitled to qualified immunity if they did not violate clearly established law.  An officer is entitled to qualified immunity when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021), citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas*, 142 S. Ct. at 7, citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).  Although the Court does not require a case directly on point for a right to be considered clearly established, there must be existing precedent that places the question beyond debate. *Rivas-Villegas*, 142 S.

---

[3] Defendants have also argued that Tolan's affidavit filed in opposition to summary judgment is a sham affidavit because it is inconsistent with his deposition testimony.  However, the Defendants did not specifically ask Tolan in his deposition about the position of his gun when he opened the door.  Accordingly, there is no inconsistency.

Ct. at 7-8. This is to be considered in the specific context of the case, not at a high level of generality or as a broad proposition. *Mullenix*, 136 S. Ct. at 308 (citations omitted).

When the case is obvious, the standards from *Graham* can "clearly establish" whether the force used was reasonable. *Rivas-Villegas*, 142 S. Ct. at 8 (citation omitted). However, when the case is not obvious, the plaintiff "must identify a case that put [the officers] on notice that [their] specific conduct was unlawful." *Rivas-Villegas*, 142 S. Ct. at 8. The Court is to look at cases that predate the incident in question to determine if the law was clearly established on the date of the incident. *Estate of Aguirre v. County of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022). If there were cases sufficiently specific to establish the right at issue in this case prior to the incident, then qualified immunity is not appropriate. The officers in this case were dispatched to Tolan's residence on January 21, 2018. Accordingly, if case law prior to that date established that the officers' conduct, viewed in the light most favorable to Tolan, was unconstitutional, the officers are not entitled to qualified immunity.

It has long been established that simply possessing or holding a weapon at the time of an encounter with law enforcement does not necessarily justify use of force. *See Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2s 321, 325 (9th Cir. 1991). The Ninth Circuit has held that where there are factual

disputes as to the imminent threat to law enforcement officers based on whether the suspect was pointing a gun at them, summary judgment is not appropriate. *George*, 736 F.3d at 838.  *George* and *Estate of Lopez*, both of which predate the early morning incident at issue in this case, exhaustively discuss Ninth Circuit precedent that clearly established that a reasonable jury could determine an officer violated the Fourth Amendment if he shot a person who was not posing an imminent threat to the officer or others, even if that person had a weapon, but was not acting in an objectively threatening manner.  *See George*, 736 F.3d at 839; *Estate of Lopez*, 871 F.3d at 1021-1022.  Accordingly, the Court finds that the law was clearly established at the time of Tolan's shooting.

This is not to say, however, that the officers acted unconstitutionally as a matter of law, nor that they might not be entitled to qualified immunity.  To the contrary, as in *George* and *Estate of Lopez*, there are simply "genuine issue[s] of material fact that prevent[] a determination of qualified immunity until after trial on the merits."  *Estate of Lopez*, 871 F.3d at 1021, citing *Liston v. Cty. of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997).  If the jury determines that Tolan was raising his gun as if to shoot the officers, then their conduct likely did not violate the Fourth Amendment or, even if it did, they would likely be entitled to qualified immunity as "'a furtive movement, harrowing gesture, or serious verbal threat' can justify deadly force against someone who is armed" and thus does not violate

clearly established law. *Estate of Lopez*, 871 F.3d at 1021, citing *George*, 736 F.3d at 838. On the other hand, if the jury finds that Tolan's arm remained down and the gun was not raised or being raised when the officers were at the porch of his residence and he was not an imminent threat to the officers, then Tolan's right to be free of excessive force was clearly established at the time of the incident. *Estate of Lopez*, 871 F.3d at 1021. Because these are disputed factual issues that must be determined by the jury, summary judgment on qualified immunity is not appropriate.

### B. State Law Claims against Trujillo and Sennett

As noted above, the parties have agreed that Deputy Sennett did not batter Tolan, and so any claim against Sennett based on that allegation is properly dismissed. Tolan alleges assault against both officers, and battery against Trujillo. The deputies did not specifically move for summary judgment on these claims, and thus they remain for determination at trial.

Both Trujillo and Sennett did move for summary judgment on Tolan's punitive damage request, arguing that they did not possess the requisite mental state justifying an award of punitive damages. Punitive damages may be awarded in a § 1983 case when the "defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005, citing *Morgan v.*

*Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993).  Additionally, if the plaintiff can

establish that the act or omission causing his injury was maliciously, wantonly, or

oppressively done, then he may be entitled to punitive damages.  *Dang*, 422 F.3d at

808 (citations omitted).  An act is malicious "if it is accompanied by ill will, or

spite, or if it is for the purpose of injuring another."  *Dang*, 422 F.3d at 809 (citing

Ninth Cir. Model Civil Jury Instruction 7.5 (2002)).  An act is "in reckless

disregard of the plaintiff's rights if, under the circumstances, it reflects complete

indifference to the plaintiff's safety, rights, or the defendant acts in the face of a

perceived risk that its actions will violate the plaintiff's rights under federal law."

*Dang*, 422 F.3d at 809.  An act is oppressive "if done in a manner which injures or

damages or otherwise violates the rights of another person with unnecessary

harshness or severity as by misuse or abuse of authority or power or by taking

advantage of some weakness or disability or the misfortunes of another person."

*Dang*, 422 F.3d at 809 (citations omitted).

Tolan has raised genuine issues of material fact about whether the conduct

of Trujillo and Sennett meets the standards for an award of punitive damages.  As

noted above, there is a factual dispute about what, if any, threat Tolan posed to the

officers when they arrived at his residence.  If the jury concludes that Tolan was

not an immediate threat, and the officers used excessive force, then it could

conclude that the officers' actions were in reckless disregard for Tolan's safety and

rights, or that they were unnecessarily harsh or severe in their conduct in light of

Tolan's mental health during the time in question.  On the other hand, if the jury

concludes Tolan did pose an immediate threat to the officers, then the standard for

a punitive damage award would not be met.  This determination is properly left to

the jury to decide.

### C. Claims against Yellowstone County

The County argues it is entitled to summary judgment on all claims, relying

primarily on its assertion that the officers acted reasonably because Tolan was

raising his gun at them.  As discussed below, the Court finds that there are genuine

issues of material fact as to all claims against the County, and thus summary

judgment is not appropriate.

#### 1.  Statutory Immunity

Montana law provides immunity for civil damages when an injury is caused

by a legal use of force.  Montana Code Annotated § 27-1-711 states:

> A use of force allowable under the provisions of Title 45, chapter 3,
> part 1, provides immunity to the person using the force from civil
> damages for injury to any person or property arising from injury to the
> person, or damage to the property of the person, against whom the
> force was used.

Title 45 defines when a use of force is allowable in defense of a person:

> A person is justified in the use of force or threat to use force against
> another when and to the extent that the person reasonably believes
> that the conduct is necessary for self-defense or the defense of another
> against the other person's imminent use of unlawful force.  However,

the person is justified in the use of force likely to cause death or serious bodily harm only if the person reasonably believes that the force is necessary to prevent imminent death or serious bodily harm to the person or another or to prevent the commission of a forcible felony.

Montana Code Annotated § 45-3-102.  When read together, these statutes provide that a person who has used deadly force is immune from civil damages when there has been a determination that the person reasonably believed the force was necessary to prevent imminent death or serious bodily harm.

This case presents two different scenarios of what occurred during the early morning hours at Tolan's residence.  From the officers' perspective, Tolan was armed when he answered the door, and was either "ready" to aim the gun at the officers or was "beginning" to raise the gun at the officers.  From Tolan's perspective, the officers (who did not identify themselves as law enforcement and thus were unknown to Tolan as such) were trespassing on his property and when he answered the door, Tolan had the gun in his hand, but did not raise it.  Whether the officers reasonably believed they were in imminent risk of death or seriously bodily harm, and thus justified in using deadly force and immune from liability, is an issue of fact for the jury to determine.

### 2.  Negligence claims against the County

The Court has previously dismissed negligence claims against Trujillo and Sennett under Montana Code Annotated § 2-9-305(5), noting that the County

remains a defendant on this claim and is responsible for the acts and omissions made by its employees in the course and scope of their employment with the County. (Doc. 29 at 7-8; Doc. 30 at 2). Accordingly, the County is liable for negligent conduct of its employees.

A successful negligence claim requires a showing of a legal duty, a breach of that duty by the defendant, a causal connection between the breach and an injury, and damages. *Bassett v. Lamantia*, 417 P.3d 299, 305 (Mont. 2018) (citation omitted). The determination of the existence of a legal duty is a question of law for the court. *Bassett*, 417 P.3d at 305. In *Bassett*, the Montana Supreme Court considered whether a law enforcement officer owed a legal duty to a person alleging he was directly harmed by the officer's actions while the officer was engaged in law-enforcement responsibilities. *Bassett*, 417 P.3d at 309. The *Bassett* court found

> . . .the standard of care an officer owes in that situation is the care that a reasonable officer with similar skill, training and experience would exercise under the same or similar circumstances.

*Bassett*, 417 P.3d at 311. The court further noted that whether there was a departure from that standard of care, and a subsequent injury resulting in damages, was for the fact-finder to determine at trial. *Bassett*, 417 P.3d at 311.

Tolan has raised sufficient issues of fact for his negligence claim to go to the jury. He has provided the expert testimony of William Harmening, who has

20

opined in part that Trujillo and Sennett failed to comply with accepted police
practices in their response to Tolan's residence and that they acted unreasonably in
their perception of a threat.  (Doc. 60 at 56-57; Doc. 60-6 at 2-3).  The County
argues that there can be no negligence claim because the officers intentionally shot
at Tolan, but that unfairly narrows Tolan's negligence claim, which encompasses
the deputies' conduct prior to the shooting, including failing to try to call Tolan
when they had phone numbers for him, failing to identify themselves as law
enforcement before coming onto Tolan's property, and failing to answer when he
called out to them.  While the County encourages the Court to find as a matter of
law that the officers had no duty to announce themselves or call, the law does not
so limit the duties of law enforcement, as noted in *Bassett*.  The standard of care is
that which a similarly situated officer would do, and there is conflicting testimony
about the appropriateness of the deputies' conduct that night.  Accordingly, this is
an issue for the jury to decide.

### 3.  Assault and Battery

To the extent the Complaint alleges assault and battery against the County, it
would only be as the employer of Deputies Trujillo and Sennett.  The County does
not argue that it is not liable for any intentional acts of its employees, but instead
recites the same defenses argued by Trujillo and Sennett in their individual
motions, namely that their use of force was justified by their reasonable

apprehension of a serious imminent threat.  For the same reasons as discussed above, there are factual issues precluding summary judgment on these claims.

### 4.  Punitive Damages

The County argues it is immune from punitive damages under Montana Code Annotated § 2-9-105.  Because there are no *Monell* claims against the County, the only vehicle for punitive damages in this case is state law.  The County argues that it is statutorily relieved of any duty to indemnify individual employees for punitive damages under Montana Code Annotated § 2-9-305, which states in pertinent part:

> (2)   In any noncriminal action brought against any employee of a state, county, city, town, or other governmental entity for a negligent act, error, or omission, including alleged violations of civil rights pursuant to 42 U.S.C. 1983, or other actionable conduct of the employee committed while acting within the course and scope of the employee's office or employment, the governmental entity employer, except as provided in subsection (6), shall defend the action on behalf of the employee and indemnify the employee.
>
> * * *
>
> (4)   In any noncriminal action in which a governmental entity employee is a party defendant, the employee must be indemnified by the employer for any money judgments or legal expenses, including attorney fees either incurred by the employee or awarded to the claimant, or both, to which the employee may be subject as a result of the suit unless the employee's conduct falls within the exclusions provided in subsection (6).
>
> (5)   Recovery against a governmental entity under the provisions of parts 1 through 3 of this chapter constitutes a complete bar to any action or recovery of damages by the claimant, by reason of the same subject matter, against the employee whose negligence or wrongful act, error,

omission, or other actionable conduct gave rise to the claim. In an action against a governmental entity, **the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment,** *unless the claim constitutes an exclusion provided in subsections (6)(b) through (6)(d).*

(6)   In a noncriminal action in which a governmental entity employee is a party defendant, the employee may not be defended or indemnified by the employer for any money judgments or legal expenses, including attorney fees, to which the employee may be subject as a result of the suit if a judicial determination is made that:

(a)   the conduct upon which the claim is based constitutes oppression, fraud, or malice or for any other reason does not arise out of the course and scope of the employee's employment;

(b)   the conduct of the employee constitutes a criminal offense as defined in Title 45, chapters 4 through 7;

(c)   the employee compromised or settled the claim without the consent of the government entity employer; or

(d)   the employee failed or refused to cooperate reasonably in the defense of the case.

Montana Code Annotated § 2-9-305 (emphasis added).  This Court has construed this statute to potentially allow punitive damages against a governmental employer when the conduct giving rise to the award of punitives has been acknowledged by the employer as within the course and scope of employment, even if malicious and intentional.  *Estate of Ramirez by and Through Ramirez v. City of Billings*, CV 17-52-BLG-DWM, 2019 WL 366894, *10 (D. Mont. January 30, 2019), citing *Kornec v. Mike Horse Mining & Milling*, 180 P.2d 252, 256-57 (Mont. 1947).  Accordingly,

23

the jury should be allowed to determine whether punitive damages are appropriate based on the conduct of Deputies Trujillo and Sennett.

## IV.    Conclusion

For the reasons stated above, the Court finds there are genuine issues of material fact precluding the Defendants' motions for summary judgment.

Accordingly,

IT IS RECOMMENDED that the Defendants' motions for summary judgment (Docs. 40, 50 and 52) be denied and that the battery claim against Sennett be dismissed by agreement of the parties.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 6th day of September, 2022.

Kathleen L. DeSoto
United States Magistrate Judge

24