IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

TRAVIS JAMES TOLAN,

               Plaintiff,

vs.

YELLOWSTONE COUNTY, *et al.*,

               Defendants.

CV 20-02-BLG-SPW

ORDER ADOPTING
FINDINGS AND
RECOMMENDATIONS

Before the Court are United States Magistrate Judge Kathleen DeSoto's Findings and Recommendations, filed September 6, 2022. (Doc. 79). Judge DeSoto recommended denying Defendants Deputy Tyler Sennett, Deputy Brendan Trujillo, and Yellowstone County's ("Defendants") motions for summary judgment (Doc. 40, 50, 52). Defendants have timely objected to Judge DeSoto's Findings and Recommendations. (Doc. 80). After careful review of the filed objection and Plaintiff Travis James Tolan's ("Plaintiff") response (Doc. 81), the Court adopts Judge DeSoto's Findings and Recommendations in full.

I.    **Legal Standards**

    A.    **Standard of Review**

The parties are entitled to a de novo review of those findings to which they have "properly objected." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

1

The portions of the findings and recommendations not properly objected to or not objected to by any party are reviewed for clear error. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir. 1997) (citation omitted). The Court may accept, reject, or modify, in whole or in part, those findings and recommendations objected to. 28 U.S.C. § 636(b)(1).

An objection is proper if it "identif[ies] the parts of the magistrate's disposition that the party finds objectionable and present[s] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, No. CV 09-147, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id.* Objections are not "a vehicle for the losing party to relitigate its case." *Hagberg v. Astrue*, No. CV 09-01, 2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009) (citation omitted).

## B.   Summary Judgment Standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to

judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making its determinations, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 587.

## II.    Facts

The parties do not object to Judge DeSoto's factual findings. As such, the Court adopts the facts as set out by Judge DeSoto and reiterates only those necessary to its analysis below.

## III.   Discussion

Defendants filed timely objections to the Findings and Recommendations, some of which are proper and some of which are improper. (Doc. 80). The Court will analyze those issues properly objected to under de novo review, and those improperly objected to under clear error review.

For the reasons explained below, the Court adopts Judge DeSoto's Findings and Recommendations in full.

A.     **Sham Affidavit**

Defendants first object to Judge DeSoto's rejection of Defendant's argument that Plaintiff's affidavit—in which Plaintiff stated his gun was pointed at the ground—is a sham affidavit and should be disregarded.

The so-called sham affidavit rule prohibits a party from creating an issue of fact by submitting an affidavit that contradicts his prior deposition testimony. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). The rule is intended to preserve the value of summary judgment by preventing parties from fabricating issues of material fact. *Id.* However, the 9th Circuit advises that the rule "'should be applied with caution' because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Id.* (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993) (internal citations omitted)).

For the court to disregard an affidavit as a sham, the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009). In other words, the affidavit cannot "flatly contradict[]" prior testimony. *Id.* at 999. For instance, in *Cole*, the court found a contradiction when a slip-and-fall plaintiff repeatedly said in her deposition that she did not recall seeing anything wet on the floor but later said in her affidavit that

4

she felt herself slip on a wet substance on the floor. *Cole v. CVS Pharmacy, Inc.*, No. 1:19-CV-01384, 2022 WL 2791354, at *3-4 (E.D. Cal. July 15, 2022). The court emphasized that the plaintiff was explicitly asked during her deposition about the condition of the floor and whether she thought it was wet. *Id.*

However, an affidavit can elaborate upon, explain, or clarify prior testimony without creating a contradiction. *Van Asdale*, 577 F.3d at 999. In *Walden*, a plaintiff alleging sexual harassment described in her deposition and in her affidavit different ways her emotional distress manifested. *Walden v. Md. Casualty Co.*, No. CV 13-222, 2017 WL 5894532, at *2 (D. Mont. Nov. 29, 2017). In her deposition, the plaintiff described that she "couldn't handle" the stress of the event but did not have difficulty sleeping, difficulty eating, or stomach problems. *Id.* She also said she did not know whether she experienced nausea, tension, or anxiety. *Id.* In her affidavit, the plaintiff said she experienced panic attacks, shaking in her hands and arms, and perfuse perspiration. *Id.* The court found that the plaintiff's affidavit merely elaborated on her previous testimony, particularly counsel did not specifically ask during her deposition how her stress physically manifested. *Id.* at *2-3. The vagueness of the question, the court concluded, justified the plaintiff's failure to explain her physical symptoms in the first instance. *Id.* at *3.

A court can disregard a contradictory affidavit when the affidavit contains facts that the affiant previously testified he could not remember. *Yeager*, 693 F.3d 1076. In *Yeager*, Yeager did not recall answers to approximately 185 questions—including ones about difficult-to-forget events like his involvement in a plane crash—during his deposition, despite being shown numerous exhibits to refresh his recollection. *Id.* at 1080. Three months later, Yeager filed a declaration that contained answers to the questions he previously could not recall. *Id.* Yeager's only explanation for his recollection was that he reviewed certain documents that triggered his memory. *Id.* The Ninth Circuit affirmed the district court's finding that "the disparity between the affidavit and deposition is so extreme" that Yeager's testimony was contradictory, and that his explanation for remembering the facts was weak. *Id.* Accordingly, the court found the affidavit to be a sham and disregarded the declaration. *Id.*

Defendants argue that Plaintiff's deposition and affidavit contradict each other because Plaintiff did not recall his gun's position during his deposition, yet described its position in his affidavit. (Doc. 80 at 11). Further, Defendants assert Plaintiff provided no explanation for his recollection. (*Id.*). Plaintiff argues his testimony is not contradictory because Plaintiff was never asked about the position of his gun during his deposition. (Doc. 81 at 4). As such, Plaintiff's description of the gun's position in his affidavit was merely supplemental information. (*Id.*).

6

Plaintiff's deposition and affidavit do not clearly and unambiguously contradict one another because he did not say anything in his deposition about the position of his gun. So, his comments in his affidavit about the position of his gun merely elaborated on his deposition testimony, like in *Walden*. Had Plaintiff stated in his deposition that he pointed his gun in another direction other than at the ground or was asked specifically about his gun upon opening the door and omitted the information, then a clear and ambiguous contradiction like the one found in *Cole* would exist.

Furthermore, Plaintiff never stated he could not remember the position of his gun. In Plaintiff's deposition, he was asked and answered the following:

Q: "What do you remember about answering the door?"

A: "I remember answering it, I remember saying 'hello', and then I remember four shots fired, I remember grabbing my stomach, closing the door, walking into my house, grabbing my stomach and then laying on the ground."

(Doc. 65-1 at 2). He was then asked if the police entered the house. (*Id.*). The only questions asked about the gun was whether he had it when he opened the door, what hand he had it in, and whether that was his dominant or non-dominant hand. (*Id.* at 2-3). Plaintiff was never asked specifically where the gun was pointed or what he did with the gun, unlike in *Yeager*. Instead, he was asked an open-ended, vague question about what happened after he walked through his front door and encountered Deputies Sennett and Trujillo ("Deputy Defendants").

7

Failing to respond to that question with the position of the gun is an honest discrepancy given the framing of the question, which justifies Plaintiff's elaboration in his affidavit.

The cases relied on by Defendants all involve clear and unambiguous contradictions that do not exist here. *E.g. Cole*, 2022 WL 2791354, at *3-4 (see discussion above); *Gergawy v. U.S. Bakery, Inc.*, No. 2:19-CV-417, 2022 WL 395308 (E.D. Wash. Feb. 8, 2022) (Gergawy first testified that his healthcare benefits lapsed for three or four days, then later declared that they had lapsed for 16 days); *Crawford v. George & Lynch, Inc.*, 19 F. Supp. 3d 546 (D. Del. 2013) (Crawford maintained in his deposition that he did not remember certain phone calls, but then after reviewing only the phone call log, perfectly remembered the entire telephone conversation). As such, these cases are not persuasive.

For these reasons, Plaintiff's affidavit is not a sham, and the Court will consider it in determining the remaining issues.

### B.    Qualified Immunity

Defendants next object to Judge DeSoto's denial of qualified immunity for Deputy Defendants. Defendants primarily argue that no genuine dispute of material fact exists as to the position of Plaintiff's gun, so Deputy Defendants are entitled to qualified immunity. (Doc. 80 at 16-17). Defendants also argue that

even if a genuine dispute exists, Deputy Defendants are entitled to qualified immunity based on the mistake doctrine. (Doc. 80 at 17-19).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). While qualified immunity should be determined as early as possible in the litigation, summary judgment "is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after a trial on the merits." *Liston v. Cty. Of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997) (internal quotation marks and citation omitted).

The Supreme Court developed a two-step test for assessing whether a government official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). First, the court must decide whether the facts alleged by a plaintiff make out a violation of a constitutional right. *Id.* Second, the court must decide whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.*

Defendants do not object to Judge DeSoto's finding that Plaintiff's right was clearly established at the time of the incident. The Court reviews this finding for clear error and finds none based on the rights established in *George* and *Lopez*, as explained by Judge DeSoto. (Doc. 79 at 15 (citing *George v. Morris*, 736 F.3d

9

829, 838 (9th Cir. 2013) and *Estate of Lopez by and through Lopez v. Galhaus*, 871
F.3d 998, 1005 (9th Cir. 2017)).

### 1.     Genuine Dispute of Fact

On whether Deputy Defendants violated Plaintiff's constitutional rights,
Defendants first object to Judge DeSoto's finding that a genuine dispute existed as
to the position of Plaintiff's gun and thus whether an immediate threat to the
officers existed that justified their use of deadly force.  Defendants argue that no
such dispute exists, that Plaintiff was raising his gun at officers, and that Plaintiff's
action created an immediate threat to officers that justified their use of deadly
force.  (Doc. 80 at 16).  Because Deputy Defendants were justified in their use of
deadly force, they did not violate Plaintiff's Fourth Amendment rights and are
entitled to summary judgment.  (*Id*. at 16-17).

This objection is improper because it merely rehashes arguments presented
to Judge DeSoto in the first instance.  Additionally, the objection is contingent on
the Court's finding that Plaintiff's affidavit should be disregarded as a sham.  (*See*
Doc. 80 at 16-17).  Since the affidavit is not a sham and creates a material issue of
fact, Defendants' objection based on the dispute over the position of Plaintiff's
pistol fails.

Reviewing Judge DeSoto's recommendation to deny summary judgment on
the ground that a genuine issue of material fact exists, the Court finds no clear

error.  Judge DeSoto correctly noted that where an individual points a gun in the officers' direction, the officers are "undoubtedly entitle[d] … to respond with deadly force." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013).  Additionally, a person's furtive movement, harrowing gesture, or serious verbal threat may give rise to an immediate threat. *Id.*  However, merely possessing a deadly weapon does not render an officer's response per se reasonable and entitle the officer to qualified immunity. *Id.*

In assessing whether Plaintiff's conduct constituted an immediate threat, Judge DeSoto properly found *Lopez* and *George* as analogous cases.  In each, the 9th Circuit denied summary judgment because a dispute existed over the position of the plaintiffs' guns when the plaintiffs did not exhibit any other threatening behavior, which precluded a finding of any immediate threats that would have justified their uses of force. *George*, 736 F.3d at 838; *Lopez*, 871 F.3d at 1007-08.

In *Lopez*, the 9th Circuit rejected summary judgment for the officer when there was a factual dispute over how the plaintiff's gun moved; it was not enough for the officers show that the "barrel [of the rifle] was beginning to rise" since "it could have been raised to a slightly-higher level [than the ground] without posing any threat to the officers. *Lopez*, 871 F.3d at 1007-08 (citing *Estate of Andy Lopez v. Gelhaus*, 149 F. Supp. 3d 1154, 1162 (N.D. Cal. 2016)).  In fact, a reasonable jury could find any upward movement of the barrel of the gun to be incidental to

11

the plaintiff turning around to look at the officers rather than a threatening movement. *Id.* at 1008.

Similarly, in *George*, the 9th Circuit rejected summary judgment for the officers because a dispute existed over whether, when the plaintiff turned toward the officers, he pointed his gun at the officers or the ground. *George*, 736 F.3d at 838. The court denied summary judgment even though the officers were responding to a domestic dispute, which the 9th Circuit has determined is "particularly dangerous" for officers, and knew that the plaintiff had a gun before arriving. *Id.*

Likewise, here, a genuine dispute exists over the position of Plaintiff's gun and whether the position created an immediate threat to officers. Reading the facts in a light most favorable to Plaintiff, his gun was pointed at the ground. Assuming this is true, as the Court must, Deputy Defendants' conduct would be unjustified because Plaintiff presented no immediate threat.

Furthermore, even if the Court considered Deputy Defendants' statements as the undisputed version of events, the Court still could not find summary judgment in their favor based on *Lopez*. Both statements lack the specificity with respect to the position of Plaintiff's gun that is necessary for the Court to find that Plaintiff undisputedly posed an immediate threat. Like in *Lopez*, Deputy Defendants never allege that Plaintiff pointed his gun at them, and instead "use carefully-phrased

language," saying that Plaintiff began to raise or began to swing his gun at them. (Doc. 43 at 5; Doc. 44 at 4); *Lopez*, 871 F.3d at n.8 (describing the officers' statements that the plaintiff "began to point" his weapon, was "bringing the barrel of [the weapon] up and around in their direction," or was "in the process of pointing [it] at deputies).

As such, the Court is left with Deputy Defendants' statements that they feared for one another's safety before they shot Plaintiff, since they did not describe another furtive movement, harrowing gesture, or serious verbal threat to justify their use of force. *George*, 736 F.3d at 838. Such statements, on their own, are not enough to justify such a concern. *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). This is particularly the case given that Deputy Defendants were responding to a welfare check—not a report of a crime or domestic disturbance, *George*, 736 F.3d at 838—and that Deputy Defendants did not warn Plaintiff to drop his weapon, let alone warn him of their identity as law enforcement, *Hughes v. Kisela*, 841 F.3d 1081, 1085 (9th Cir. 2016) (instructing courts to consider whether warnings were issued in determining the reasonableness of an officer's conduct); *Deorle*, 272 F.3d at 1248 (holding that warnings should be given when feasible if the use of force may result in serious injury).

Accordingly, the Court finds no clear error with Judge DeSoto's findings and recommendations on this issue and adopts them in full.

## 2. Mistake Doctrine

Defendants assert that Judge DeSoto erroneously ignored the mistake doctrine in her qualified immunity analysis. Defendants contend that even if Deputy Defendants mistakenly believed that Plaintiff raised the pistol, their belief was reasonable, which entitles them to qualified immunity. (Doc. 80 at 17-18). Judge DeSoto did not address the mistake doctrine in her Findings and Recommendations, even though Defendants raised it in their briefing on summary judgment, so the Court will review this argument de novo.

Qualified immunity protects government officials even if the official makes "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231. The mistake must be reasonable. *Id. Lopez* rejected an officer's invocation of the mistake doctrine relating to the position of the plaintiff's gun and the officer's perception of a threat because, viewing the facts in a light most favorable to the plaintiff, the gun never rose to a position that posed a threat. *Lopez,* 871 F.3d at 1020.

The Court concludes the same here based on its holding that a genuine dispute exists as to the position of Plaintiff's gun and the reasonableness of the Deputy Defendants' use of force. As such, the mistake doctrine does not save Defendants' argument that Deputy Defendants' use of force was reasonable, and summary judgment is not proper.

14

For these reasons, the Court finds no clear error with Judge DeSoto's findings that a genuine dispute of fact exists as to whether Deputy Defendants are entitled to qualified immunity and adopts her recommendation that the Court deny summary judgment on that issue.

## C.    Remaining Objections

Defendants lastly object that (1) Judge DeSoto failed to explain how an intentional act could be considered negligent, (2) Deputy Defendants are immune from the assault and battery charges, and (3) the Yellowstone County Sheriff's Office ("YSCO") is an improper party in the case. (Doc. 80 at 16-18).

The first objection is improper because Judge DeSoto did, in fact, explain how an intentional act could be a negligent act. (Doc. 79 at 21). The Court finds no clear error in that determination.

Defendants' objection concerning Deputy Defendants' immunity from the assault and battery is improper because it does not point to a specific part of Judge DeSoto's Findings and Recommendations to which it objects. (Doc. 80 at 17-18). The Court thus reviews this objection for clear error and finds none.

Defendants' final objection about the YSCO is improper because it too does not point to a specific part of Judge DeSoto's Findings and Recommendations to which it objects. (*Id.* at 19). In fact, Judge DeSoto noted that the parties seem to agree that YSCO is an improper party and stated that she only considered

Yellowstone County the proper municipal defendant. (Doc. 79 at n.1). The Court

thus reviews the objection for clear error and finds none.

## IV.   Conclusion

For the reasons discussed above, Judge DeSoto's Findings and

Recommendations (Doc. 79) are ADOPTED in full.

IT IS HEREBY ORDERED that Defendants Yellowstone County, *et al.*'s

motions for summary judgment (Doc. 40, 50, and 52) are DENIED.


DATED this 22nd day of November, 2022.

Susan P. Watters

SUSAN P. WATTERS
United States District Judge